FRANK R. HENDERSON
*v.*
DELLA J. KIBBIE *et al.*

*Opinion filed October 24, 1904.*

1. Costs—*fee bills cannot be levied before demand for payment.* Section 28 of the Costs act does not authorize the levy of a cost or fee bill upon land unless payment of the bill shall not be made within thirty days after demand for payment.

2. JUDICIAL SALES—*when sale will be set aside.* A sale *en masse* of the interest in remainder in two tracts of land to the life tenant for one-tenth of its value, to satisfy a bill for costs in litigation in which he was an attorney and an interested party, will be set aside, where he procured the cost bill to be levied without the statutory demand for payment and refused to bid on either tract separately, although either was worth much more than the amount of the cost.

3. LACHES—*laches is not ordinarily imputed to remainder-men.* Laches is not ordinarily imputed to remainder-men during the continuance of the preceding estate, since the Statute of Limitations does not operate against them.

4. CHAMPERTY—*defense of champerty is available only in suit between parties.* The defense of champerty can only be interposed

in an action between the parties to the champertous contract, and does not furnish ground for refusing relief in the proceeding to which the champertous contract relates.

5. RES JUDICATA—*when right to set aside sale is not res judicata.* The right of remainder-men to have a sale of their interest set aside is not *res judicata* by reason of their failure to ask such relief by cross-bill in a prior proceeding by the life tenant against the same defendant to have the sale of the life estate set aside, where, although the remainder-men were made parties defendant to that suit, the sales were made at different times, in distinct proceedings and by different officers of different courts.

6. JUDGMENTS AND DECREES—*what should be provided in decree granting conditional relief.* A decree setting aside a sheriff's sale and allowing redemption upon performance by complainants of certain specified conditions, should provide that in case of non-performance of the conditions within the time limited by the decree the bill shall be dismissed at complainant's cost.

APPEAL from the Circuit Court of McLean county; the Hon. COLOSTIN D. MYERS, Judge, presiding.

ROWELL, NEVILLE & LINDLEY, and WELTY & STERLING, for appellant.

OWEN & OWEN, and BARRY & MORRISSEY, for appellees.

Mr. JUSTICE BOGGS delivered the opinion of the court:

This is an appeal from a decree entered in the circuit court of McLean county setting aside a certain sale made by the sheriff of McLean county of the interest in remainder of the appellees in and to the north-west quarter of the south-east quarter and the north-east quarter of the south-west quarter of section 32, town 22, north, range 4, east of the third principal meridian, in said McLean county, Illinois.

James R. Craig, father of the appellees, had caused the title to the lands to be placed in the appellees, subject to an estate for life in himself. Subsequently the wife of said James R. Craig (step-mother of the appellees) obtained a decree of divorce from him with an award of alimony, and in a supplementary proceeding was granted a decree in chancery finding and declaring that the said lands, and all title

and interest of the appellees therein, were subject to her marital rights and subject to the lien of the decree for alimony which was entered in her favor in said divorce proceeding, but it was also ordered that the estate for life of the said James R. Craig in the lands should be first applied to the payment and discharge of said decree for alimony and said life estate exhausted before the estate in remainder in the appellees should be sold thereunder. Under this latter decree the estate for the life of said James R. Craig was sold by the master in chancery, the appellant being the purchaser. There was no redemption, and on the 21st ·day of April, 1894, the appellant received a deed from the master in chancery conveying such estate for life to him. On the 5th day of May of the same year he entered into possession of the lands as the owner of an estate for and during the life of the said James R. Craig. On the 11th day of August, 1894, he contracted with Mrs. Craig for, and received from her, an assignment of all moneys due or to become due under the decree for alimony. On September 10, 1894, after he had obtained from Mrs. Craig the absolute assignment of the decree for alimony, he filed a petition in the circuit court of McLean county in her name, setting up that alimony to the amount of $175 had fallen due and was unpaid, and praying that the remainder in fee in the said lands might be sold to pay the same. On December 11, 1894, a decree was rendered on said petition, to the effect that $200 should be paid in full of all alimony, due or to become due; that when the same was paid the alimony should cease, and that it was the intention to make this $200 a final allowance of alimony in the case. The fact that the appellant, before and at the time of the filing of the petition and the obtaining of the decree, had an absolute assignment of the decree for alimony and all moneys due or to become due thereunder, was not dis-· closed to the circuit court. An appeal was taken from the last mentioned decree by the appellant herein, but in the name of Mrs. Craig, to the Appellate Court, and the decree was affirmed. The appellant then caused the case to be taken to

the Supreme Court on a writ of error sued out in the name of Mrs. Craig. Neither the Appellate Court nor the Supreme Court was informed of the fact that appellant herein had an assignment of the decree for alimony and all moneys due or to become due thereunder. In this court, on such writ of error, it was held that Mrs. Craig had a vested property right in so much of .the alimony as had accrued when the petition was filed, and that the circuit court was without power to divest that right and that in that respect the decree was erroneous, and affirmed the decree in part and reversed it in part, and ordered that the defendants in error, who are the appellees in this cause, should pay the cost of the proceeding in this court. This judgment for costs was rendered in the Supreme Court in November, 1896. On the 8th day of January, 1897, the appellant procured to be issued out of the office of the clerk of the Supreme Court a bill of costs adjudged to be paid by the plaintiff in error by the judgment of said Supreme Court, and also a bill of costs made out and taxed by the clerk of the court of the costs made by the defendants in error in the case. Appended to each of these bills of cost was an execution, commanding the sheriff of McLean county to cause the amount of the said bills of cost to be made by levies on the goods and chattels, lands and tenements, of the said defendants in error in said cause. These fee bills were received by the said sheriff of McLean county on the 13th day of January, 1897. By virtue thereof the sheriff, on January 19, 1897, levied on the estate in remainder of the appellees in said lands, and advertised the same for sale on the 15th day of February, 1897. At the sale the estate in remainder in each tract was offered separately, but no bids were received for either of them. The estate in remainder in both tracts was then offered *en masse,* and the appellant bid therefor the sum of $157.11, being the total amount of costs in the Supreme Court, as shown by the two fee bills, and of the costs of the sale. The two tracts of land were struck off and sold to the appellant for that sum, and not being· redeemed, the sheriff, in May, 1898,

executed a deed therefor to the appellant. This is the sale, and deed thereunder, which was ordered to be set aside by the decree here brought into review. The relief was granted upon certain conditions and terms specified in the decree, which, so far as important to be here known, will be stated hereinafter.

The chancellor found, from the evidence adduced upon the point, that the estate in remainder in the two tracts of land at the time of the sale under the fee bills was worth $2155, and that the sum of $157.11, for which they were struck off and sold *en masse* to the appellant at that sale, was grossly inadequate. The appellant insists the evidence does not justify the estimate of value made by the chancellor, but as his estimate, based upon the evidence as he views it, shows that the estate in remainder in the land sold was of the value of $1600, it appears from his own showing that the land was struck off and sold to him for less than one-tenth of its value. So the evidence, in the most favorable view to be taken in behalf of the appellant, disclosed that the lands were sold at a grossly inadequate price. In addition to this, it did not appear from the endorsements made by the sheriff, or otherwise in proof, that he demanded payment of the cost bills, as it was made his duty to do by the provisions of section 28 of chapter 33 of our statute entitled "Costs." (1 Starr & Cur. Stat. 1896, pp. 1076, 1077.) The provisions of this same section, in addition to requiring the sheriff to demand payment of the cost bills, authorized the cost bills to be levied only in the event payment should not be made within thirty days after the making of a demand for payment. This latter provision of the statute was ignored, and the fee bills were levied on appellees' interests in the lands within six days after the writs came to the hands of the sheriff, though it was proven the appellees resided in McLean county at the time and that they and their places of residence were well known to the appellant and to the sheriff.

There was no necessity that both tracts of the land should have been levied upon. The estate of the appellees in either

tract so far exceeded in value the amount of the cost bills that a levy upon either would have been quite sufficient. The action of the appellant in refusing to bid any sum on either tract separately, though the estate in remainder in either tract was of value five times greater than the total amount of the cost bills and of the cost of sale, and his action in forcing both tracts to be sold *en masse* for less than one-tenth of their value, indicated that it was the primary purpose and design of the appellant to unfairly obtain the title to the lands.

While mere inadequacy of price bid for land sold subject to redemption may not, of itself, constitute ground for equitable interference, yet when, as here, the inadequacy is gross, the requirements of the statute designed for the protection of the owners of the property have not been observed, and the land has been sold *en masse* under circumstances indicating a purpose on the part of the purchaser, who was also a party in interest and attorney in the case in which the writs were issued, to improperly and unjustly use the process and the official sale as the means of obtaining the title to the land for but a very small part of the value thereof, equity will interfere to set aside the sale. (*Dutcher* v. *Leake,* 44 Ill. 398; *Henderson* v. *Harness,* 184 id. 520; *Miller* v. *McAlister,* 197 id. 72.) We think the evidence warranted the application of this principle to the circumstances of this case.

The bill was filed June 16, 1902,—nearly five years after the sale,—and it is urged by the appellant that the appellees should have been declared estopped, by reason of *laches,* to question the sale after such long delay. It is a fixed principle of judicial proceedings in this State that objections to the validity and regularity of judicial sales should be promptly urged, and it is the general rule that any unreasonable, unexplained delay will bar relief on the ground of *laches.* The circumstances of the case in hand were so exceptional that we are inclined to the view that the action of the chancellor in setting aside the sale on equitable terms should be sustained. The time allowed by the statute for the payment of

costs before making the levy was ignored and violated. The levy was unnecessarily made upon both tracts of land, and both were forced by the appellant to sale *en masse* and at a grossly inadequate price. It is apparent that the appellees did not know that the land had been levied upon and was to be sold, and equally apparent the appellant, though sustaining the relation of tenant of the intermediate estate, did not desire them to know of the sale. No change of possession was occasioned by the sale and deed to the appellant, and one, at least, of the appellees (Mrs. Kibbie) did not learn of the sale until within a short time prior to the filing of the bill. The appellant, the purchaser at the sale, was the owner of an estate for the life of James R. Craig in the land, had the actual possession thereof, and the appellees, the owners of the estate in remainder, were powerless to maintain any possessory action against him. The Statute of Limitations, by the express provisions of that enactment, does not operate against remainder-men during the continuance of the preceding estate, and, as said in *Borders* v. *Hodges,* 154 Ill. 498, for this reason *laches* is not ordinarily imputable to the holders of estates in remainder. The appellant has not placed any improvements on the land or made any expenditures thereon, and has not been misled or induced by the delay to do or omit to do anything, nor has his position in anywise been changed, nor has the non-action of the appellees in any way prejudiced him. The haste and secrecy in making the levy in violation of positive requirements of the statute, the participation of the appellant therein, his conduct as a bidder at the sale, the unnecessary levy upon and sale of both of the tracts of land *en masse* at a grossly inadequate price, established so clearly a case of unfairness, oppression and wrong, considered together with all the circumstances of the case, as justified the action of the chancellor in awarding relief in equity notwithstanding the delay in asking the aid of the court.

It is complained the chancellor refused to permit the appellant to show, upon cross-examination of Leslie J. Owen,

who testified as a witness in behalf of the appellees, that said witness had a financial interest in the result of the suit. That a witness has an interest in the result of an action is always proper to be shown for consideration in determining as to the weight and value of his testimony. The witness Owen was one of the solicitors for the appellees and interested to that extent, and that, of course, the chancellor well knew. It was also allowed to be proven. But the appellant was insisting on the right to present, as a defense, an alleged champertous contract between the appellees and their attorneys, including the witness, and propounded the question which the court refused to allow to be answered, for the purpose of bringing out, in detail, the terms and conditions of the alleged champertous contract, in order to make testimony thereby in support of the defense of champerty. The action of the court was on the ground a champertous agreement, if proven, would not be available to the defendant as a defense, and therefore the testimony was improper. This view was correct, as we shall hereinafter see.

The chancellor did not err in refusing to accept the contention of the appellant that the subject matter of this suit should be deemed *res judicata*. James R. Craig exhibited a bill in chancery to set aside the sale of his estate for life in these lands which had been made by the master in chancery of McLean county under the decree against him for alimony, hereinbefore mentioned. The appellees, it seems, were made parties defendant to that bill. The contention of the appellant is, that the appellees properly could, and should, have exhibited their cross-bill in that action asking a decree giving them the same relief claimed in the bill in the present case, and that having failed to so cause their grievance to be there litigated, they are to be deemed adjudicated by the decree in such former proceeding. One reason why this contention is unsound is, that a cross-bill asking such relief could not have properly been filed in that cause for the reason the matters necessary to be set up in such a cross-bill would not be germane to the matter involved in the original

bill. The sale of the life estate and of the estate in remainder were entirely different and distinct proceedings, made by different officers acting under the authority of different courts and affecting entirely different estates. It is the universal rule that matters not germane to the matter involved in the original bill cannot be introduced into a litigation by way of a cross-bill.

The appellant insists that it was developed in the proof that the suit was instituted and is being prosecuted by the solicitors for the appellees under and by virtue of a champertous agreement, and that for that reason the chancellor should have dismissed the action. Without deciding that such an unlawful agreement was proven, it is sufficient to say that, whatever may be the rule in other jurisdictions, it is the rule in Illinois, and also, as we believe, the general rule, that the defense of champerty can only be interposed in an action between the parties to the champertous contract, and does not furnish any reason for refusing relief in the proceeding to which the champertous agreement relates. *Torrence* v. *Shedd,* 112 Ill. 466; *Gage* v. *DuPuy,* 137 id. 652; *Burton* v. *Perry,* 146 id. 71; 4 Ency. of Pl. & Pr. 370.

It was required, among other of the conditions upon which the sale should be vacated, that the appellees should pay to the appellant the sum of $110, with interest thereon at the rate of five per cent per annum from December 11, 1901, as being the equitable portion to be paid by the appellees, as remainder-men, of a $200 mortgage upon the land, and also to pay to appellant the sum of $84, certain costs paid by him. It is now complained that the court erred in not fixing the time of the beginning of the period for the computation of interest on the said sum of $110 at February 15, 1897, and in failing to order the payment of interest on the item of $84. We are unable to understand upon what basis the court fixed upon December 11, 1901, or upon what basis the appellant fixes the date of February 15, 1897, as the correct date for the computation of interest. An examination of the record discloses that this objection is made for

the first time in this court. We must therefore decline to consider it. The appellant does not state in his brief when he claims the payment of the costs was made or cite us to proof on the point, and the appellees insist such date was not made to appear by the testimony, hence we cannot declare there is error in respect of the matter.

The appellant filed a cross-bill, in which he alleged that the appellees had executed and delivered a mortgage to the solicitors for the appellees on the entire estate in the said land, and that the same had been spread of record in the office of the recorder of McLean county, and that such mortgage constituted a cloud on his right, title and interest in and to the said premises, and prayed for a decree canceling and expunging the same of record. The court overruled a demurrer to the cross-bill, but entered an order staying proceedings thereunder until the hearing of the issues under the original bill should be completed. This action on the part of the court is complained of by the appellant. The final decree recites that it was agreed in open court by the appellees and their said solicitors that a finding should be entered in the final decree that said mortgage was not a lien on the estate for the life of James R. Craig on the land, and a finding to that effect was incorporated in the decree. The truth of the allegation of the cross-bill that the mortgage was but a cloud on the title of the appellant to the estate in remainder in the land was necessarily involved in the decision of the issues made under the original bill, and the court thereupon not improperly stayed proceedings under the cross-bill until the issues under the original bill should be determined.

We think the appellant has just grounds of complaint against the action of the court in decreeing that the appellant should pay all of the costs of the proceeding, (except the cost made on the cross-bill,) and also has just grounds to complain that the court failed to order that the bill should be dismissed and that the appellees should pay all of the costs incurred in the proceeding in the event they failed to comply with the terms and conditions specified in the decree, on

compliance wherewith the decree that the sale and convey-
ance should be vacated should become operative and effect-
ive. It was provided by the decree "that the complainants
be and are hereby permitted to redeem from the sheriff's sale
of February 15, 1897, made under the fee bill issued by the
clerk of the Supreme Court in the case of Frances A. Craig
*vs.* James R. Craig *et al.* upon their paying to the clerk of this
court, for the use of the said Frank R. Henderson, the fol-
lowing amounts: $157.11, and interest at five per cent from
February 15, 1897; $110, with interest thereon at the rate
of five per cent from December 11, 1901; the sum of $400,
with interest thereon at the rate of five per cent from De-
cember 11, 1894, and $84 costs; also the sum of $112, with
interest thereon at the rate of five per cent from December
24, 1896; and that the several amounts shall be paid within
forty days from the date of this decree if no appeal is per-
fected, or within forty days after the case is finally deter-
mined if the appeal is perfected or taken to the Supreme
Court on writ of error; that on payment being made as
aforesaid, the said sheriff's sale of February 15, 1897, and
all proceedings thereunder, including the certificate of pur-
chase and the sheriff's deed, shall be and the same are hereby
set aside and canceled; that the defendant pay the costs of
this suit, except the costs on the cross-bill to be taxed by the
clerk of this court, and that execution issue therefor."

The item of $400 provided by the decree to be paid by
the appellees, with interest thereon at five per cent from De-
cember 11, 1894, was the unpaid balance of the alimony
which constituted a lien on the estate in remainder. The item
of $112 also required to be paid by the decree was for coun-
sel fees and other expenses incurred in the Appellate and
Supreme Courts in the prosecution of the appeal from the
decree entered in the circuit court of McLean county Decem-
ber 11, 1894, modifying the decree for alimony, which modi-
fication was found and declared to be improper and illegal.
The appellees did not concede, but contested, the propriety of
requiring the payment of these amounts as terms and con-

ditions on which the relief they asked would be granted; the appellant denied and contested the right of appellees to have a decree vacating the sale upon any terms or conditions. In such state of the case, in the exercise of a wise and sound discretion, the court should not have imposed payment of all the costs on the appellant in the event the appellees should comply with the terms and conditions of the decree, but should have required that in the event of compliance with the decree the appellees should pay one-half of all the costs and the appellant the other half. The decree should also have provided that in the event the appellees should fail to comply with the terms specified in the decree as conditions on which the decree vacating the sale and conveyance of the land should become operative and effective, within the time limited by the decree for compliance with the terms thereof, the bill should stand dismissed and that the appellees should pay all the costs which had accrued in the proceeding. *Decker* v. *Patton,* 120 Ill. 464; *O'Connell* v. *O'Conor,* 191 id. 215; *Carpenter* v. *Plagge,* 192 id. 82.

The decree will therefore be affirmed as of the 25th day of June, 1904, except as to the order fixing the liability of the parties to pay the costs. The cause will be reversed, with directions to the circuit court to enter a decree permitting the appellees to redeem from the said sale on compliance with the terms and conditions, as before specified, within the further period of forty days from the filing of this opinion, and ordering that in the event of compliance with said terms within the time stated the costs in that court, except the costs made under the cross-bill, shall be paid one-half by the appellant and the other one-half by the appellees, and shall also order and decree that if the terms and conditions of redemption from said sale are not complied with within the time specified, the bill shall be dismissed at the cost of the appellees. The costs in this court shall be paid one-half by the appellant and one-half by the appellees.

*Affirmed in part and remanded, with directions.*